■ In the Matter of SCOTT X. et al., Alleged to be Neglected Children. FULTON COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; ROSE X., Appellant, et al., Respondent.—Mikoll, J. P. Appeals from an order and amended order of the Family Court of Fulton County (Jung, J.), entered September 18, 1990, which, *inter alia,* granted petitioner's application, in a proceeding pursuant to Family Court Act article 10, to adjudicate the children of respondent Rose X. to be neglected.

Respondent Rose X. (hereinafter respondent) and her husband were found to have neglected their children. On this appeal respondent contests the finding of neglect, contending that her actions were reasonable and prudent and that the court's decision is against the weight of evidence. She also challenges the finding of sexual abuse of her two sons (Scott and Donald) in that the boys' out-of-court statements of sexual abuse by their father were not sufficiently corroborated.

The finding of neglect must be established by a preponderance of the evidence (Family Ct Act § 1046; *Matter of Tammie Z.,* 66 NY2d 1, 3). In a child protective proceeding, unsworn out-of-court statements of the victim may be received in evidence and, if properly corroborated, will support a finding of abuse or neglect; such out-of-court statements may be corroborated by "[a]ny other evidence tending to support" their reliability (Family Ct Act § 1046 [a] [vi]; *see,* Family Ct Act § 1012 [e] [iii]).

In this matter, petitioner presented the testimony of a child protective caseworker, Wendy Kwiatkowski, which was to the effect that in an interview with Donald, then eight years old, he told her that his father hit him with a belt, that the father caused the bruise under his eye when he pushed him down, and that his father often slaps him and his brother. When questioned as to bad touching and secret touching, Donald said he was told not to talk about touching as "Dad will go to jail". He said his father touched his private parts on two occasions and that he told his mother about the touching, and that on one occasion she yelled at the father.

Orville Hine, a certified social worker, who was qualified as an expert in the child sexual abuse syndrome and child development, testified that Donald was an eight-year-old developmentally delayed male child. He said that Donald told him that his father touched his penis on two occasions after Christmas 1989 and stuck a stick up his buttocks. The child played out the touching, with anatomically correct dolls demonstrating fellatio. At a second session with Hine, the child

testified to further physical abuse and fondling which were reported to his mother. Donald also said he saw his father have anal intercourse with Scott while respondent watched and testified to other instances of the father's fondling of Scott. Hine concluded that Donald had been sexually abused by his father.

Nancy Campbell, a certified social worker, interviewed respondent and Scott. She testified that respondent told her that she did not believe that her husband had sexually abused anyone. Respondent acknowledged knowing that her husband was sentenced to two jail terms for sexually abusing two children, including his own son from another marriage. Respondent admitted that she told Scott to "go easy" when talking to others as it could hurt his father and respondent.

Gretchen Haight, a counselor, testified of past relations between respondent, the father and their children, which included information as to the father's physical abuse and sexual advances to respondent and Scott requiring police intervention. Despite this history, respondent denied the accusations of sexual abuse against the father. Haight opined that respondent could not keep him out of her house and was unable to protect herself or her children from him.

Betty Malachowski, Director of the Child Sexual Abuse Program at Family Counseling Center, Inc., testified to interviews with Scott, then nine years old, who confirmed that his father touched his penis on two occasions and that respondent was aware of one such act. He indicated that respondent told him not to talk about it and thereafter the child would not discuss the secret or forbidden touching further. The witness rendered an expert opinion that Scott was also an abused child. Due to Scott's reticence, after his conversation with respondent, Malachowski could not complete the validation procedure as utilized by experts in the field. Family Court, however, received her opinion that sexual abuse had occurred as to Scott.

We find that petitioner proved by a preponderance of evidence that the two children were neglected. Evidence showed that respondent was told by her sons of their father's sexual abuse; that she witnessed one instance of the father inappropriately touching Scott; that she allowed the father to live in the household knowing of his past misdeeds of sexual abuse of other children; and that she intimidated Scott by warning him not to disclose the physical and sexual abuse of him by his father. All these facts adequately support a finding of respondent's neglect of her children.

As to the contention that the children's statements were not sufficiently corroborated, we find it meritless. Family Court has considerable discretion in deciding whether a child's statement has been corroborated *(see, Matter of Nicole V.,* 71 NY2d 112, 119). Donald's out-of-court statements were validated by Hine, an expert in the field. This was sufficient corroboration in itself of the child's statements *(see, Matter of Beverly WW.,* 159 AD2d 802, 804). We note, too, that respondent had testified that she did not share any sexual information with her children and that as far as she knew they had not seen any X-rated films. Despite Donald's lack of sexual knowledge, his statements, use of drawings and dolls to show sexual contact, including fellatio, lends credence that sexual abuse did occur. Expert testimony indicated that a child could not fantasize such events without either being told about them or experiencing them.

Although Scott's out-of-court statements to Malachowski and use of drawings and dolls were not validated because Scott became uneasy and Malachowski felt further probing would be ill-advised and detrimental to the child and his ultimate recanting of his accusation, his statements were sufficiently corroborated by Malachowski and Donald's statement. Each child's statement can be used to corroborate the statement of the other *(see, Matter of Nicole V., supra; Matter of Beverly WW., supra).*

Family Court's rejection of respondent's testimony as incredible was within its discretion to make as the finder of fact. Its acceptance of the testimony of petitioner's witnesses as credible, on the other hand, is also entitled to great weight *(see, e.g., Matter of Cleo K.-H.,* 172 AD2d 524, *lv dismissed* 78 NY2d 941, *cert denied sub nom. Chung v New York City Dept. of Social Servs.,* —US —, 112 S Ct 894). Because the father failed to testify and rebut the allegations against him, Family Court could draw "the strongest inference against him that the opposing evidence in the record permits" *(Matter of Commissioner of Social Servs. v Philip De G.,* 59 NY2d 137, 141).

Finally, respondent urges that an order of protection against the father would have been sufficient to protect the boys from any imminent risk of sexual abuse and that their removal from the home was unnecessary. The record is replete with respondent's inability to safeguard her children. She knew that the father posed a threat to them and yet allowed him back home; she ignored her children's complaints and tolerated abusive behavior from him toward the children. Family Court's determination to place the children with peti-

tioner is in the children's best interests and should not be disturbed.

Yesawich Jr., Levine, Mercure and Harvey, JJ., concur. Ordered that the order and amended order are affirmed, without costs.