■ In the Matter of PHYLLIS BEERS, Respondent, v TINA BEERS, Appellant. [632 NYS2d 257] —Cardona, P. J. Appeals (1) from an order of the Family Court of Delaware County (Estes, J.), entered April 20, 1994, which granted petitioner's application, in a proceeding pursuant to Family Court Act article 6, to modify a prior visitation order, and (2) from an order of said court, entered April 20, 1994, which held respondent in contempt of court.

Petitioner is the paternal grandmother of Lesley Beers (born in September 1986) and respondent is the child's mother. Respondent and the child's father were separated and in 1990, after the father was incarcerated, petitioner sought visitation. By order dated June 21, 1990, petitioner was granted alternat-

ing weekend visitations and one week during the school summer break. Thereafter, in May 1992, due to the acrimonious behavior of respondent and her relatives toward petitioner during exchanges of the child for visitation, Family Court modified its previous order by requiring, *inter alia*, that respondent prevent the attendance of her relatives at exchanges, that respondent turn the child over promptly and that neither party make "diminishing" comments about each other in the child's presence. The situation, however, did not improve and in June 1992, respondent was adjudged in contempt and served a 10-day jail term.

Stress continued to accompany exchanges of the child for visitation, allegedly due to respondent's conduct. As a result, petitioner requested a modification of visitation. An attempt at mediation was made but a trial agreement between the parties failed to end the dispute. Family Court then conducted a hearing finding that while respondent was no longer engaged in yelling and making physical threats, she was using "more subtle attempts to impede the visitation by manipulative statements, postures and conduct in the child's presence" and that she would "do all in her power to discourage" visitation. The court also found that respondent was unable to avoid intermeddling by her own mother. The court, by order dated June 16, 1993, changed the place of the exchanges from respondent's home to a local police station. It also again reiterated that respondent was to "prevent attendance by any of her relatives" at the exchanges, that neither party was to make diminishing comments in the child's presence and that the exchanges were to be promptly made.

Within a month, however, petitioner again sought a modification of visitation claiming, *inter alia*, that respondent violated Family Court's latest order by permitting both her mother and grandmother to be present at the July 9, 1993 exchange. After hearing arguments as well as viewing a videotape of the exchange, the court again found respondent in contempt. It also issued another order with respect to visitation, this time requiring respondent to deliver the child to petitioner's home for visitation. Respondent has appealed from both the contempt order as well as the last modified order of visitation.

Turning first to Family Court's visitation determination, it is well settled that the primary consideration is the best interest of the child (*see, Matter of Emanuel S. v Joseph E.*, 78 NY2d 178, 181). Respondent claims that the child is adversely affected by the great degree of animosity between the parties

and the tension during the exchanges, and that therefore visitation is not in the child's best interest. In rejecting this argument, we first note that the existence of animosity between a parent and grandparent is not a determinative factor (*see, Matter of Apker v Malchak*, 112 AD2d 518). In addition, the question of visitation is a matter within the trial court's discretion (*see, Lo Presti v Lo Presti*, 40 NY2d 522, 527). Here, the record establishes a persistent effort on respondent's part to interfere with petitioner's visitation rights. The pressure on the child during visitation exchanges would be lessened if respondent simply refrained from such activities. The record further reveals that petitioner has established a good relationship with the child and both the Law Guardian and the mental health evaluations recommended that visitation continue. Given these facts, we find that Family Court appropriately determined that visitation between petitioner and the child was in the child's best interest. The court's decision was well within the proper exercise of its sound discretion (*see, Matter of McGreevy v McGreevy*, 92 AD2d 1077, *lv denied* 60 NY2d 553).

We now turn to the disposition of the matter of contempt. In order to find that a civil contempt has occurred, it must be determined that the party charged with contempt had knowledge of and disobeyed a lawful order of the court which "express[ed] an unequivocal mandate" (*Matter of McCormick v Axelrod*, 59 NY2d 574, 583, *amended* 60 NY2d 652). In addition, it must be demonstrated that the offending conduct prejudiced a right of the complaining party (*see, supra*). In our view, the evidence supports Family Court's finding that respondent violated the terms of its June 16, 1993 order and, therefore, the court's finding of contempt should be upheld.

Here, there was admittedly a legal order in effect of which respondent was aware. Respondent, however, argues that the requirement that she prevent her relatives from attending the exchanges for visitation was not a clear and explicit mandate and that any violation thereof cannot place her in contempt. We disagree. While the order did not state how respondent was to accomplish this, it was nevertheless clear that it was up to her to see to it that her relatives did not attend or interfere with visitation. It cannot be said that there was any "legitimate confusion regarding the scope" of the court's order (*Matter of Betancourt v Boughton*, 204 AD2d 804, 810). There was also a clear violation of the order. While respondent's mother denied arriving at the July 9, 1993 exchange with respondent, a witness for petitioner testified to the contrary. This involved

an assessment of credibility and Family Court's determination in this respect is entitled to great weight (*see, Matter of Scott X.*, 184 AD2d 866). On this record, it cannot be said that the court's finding that the testimony of respondent's mother was "incredible" was unsupported by the evidence (*see, Matter of Nikkia C.*, 187 AD2d 581).

In addition, Family Court found that respondent did nothing more than make a "cursory wave" of her hand at her mother and grandmother to prevent their participation in the exchange. The videotape demonstrates that this indeed was all that was done by respondent. The videotape also shows that respondent lingered with the child and did not promptly turn the child over to petitioner as required by the court's order. Petitioner testified that respondent told the child she did not have to go. As a result, the commencement of visitation was delayed by almost 20 minutes. The record thus supports the court's conclusion that respondent violated its order by not promptly leaving the child with petitioner.

Respondent's actions also clearly prejudiced petitioner's rights. Respondent claims that because the visitation did actually occur, petitioner's rights were not impaired. Family Court's order of visitation, however, was specifically directed at alleviating the strain accompanying the exchanges prior to actual visitation. Respondent's actions were clearly in contravention of this goal. As seen on the videotape, the exchange took nearly 20 minutes to complete. Thus, petitioner's rights were obviously impeded.

The remaining arguments raised by respondent in support of reversal have been reviewed and rejected for lack of merit.

Mercure, Crew III, Casey and Spain, JJ., concur. Ordered that the orders are affirmed, without costs.