■ In the Matter of CAROL BETANCOURT, Appellant, v PATRICK BOUGHTON, Respondent. (And Two Other Related Proceedings.) [611 NYS2d 941] —Crew III, J. Appeals (1) from an order of the Family Court of Albany County (Maney, J.), entered January 6, 1992, which granted respondent's application, in a proceeding pursuant to Family Court Act article 4, to hold petitioner in contempt, (2) from an order of said court, entered August 4, 1992, which, *inter alia,* granted respondent's cross petition, in a proceeding pursuant to Family Court Act article 6, for sole physical custody of the parties' children, (3) from an order of said court, entered December 15, 1992, which, *inter alia,* granted respondent's applications, in a proceeding pursuant to Family Court Act article 6, to hold petitioner in contempt, and (4) from an order of said court, entered December 15, 1992, which, in a proceeding pursuant to Family Court Act article 6, issued an order of protection against both parties.

The parties were married in April 1979 and have two minor children, Erin (born in Dec. 1979) and Andrew (born in Oct. 1983). Following the parties' separation, respondent initially moved to Suffolk County and the children remained with petitioner in Sullivan County. In June 1989, petitioner and the children relocated to Albany County in order that petitioner could attend Siena College, and it appears that respondent thereafter moved to Orange County to facilitate the then-existing visitation schedule. The parties were granted a judgment of divorce in February 1990 which awarded the parties joint legal custody of the children, with physical custody to petitioner and extensive visitation to respondent.

Thereafter, the parties quarreled continuously regarding respondent's visitation rights. In July 1990, petitioner commenced a proceeding seeking sole custody of the children; respondent cross-petitioned for sole custody in November 1990. Petitioner thereafter sought permission to relocate to Onondaga County based upon her acceptance into medical school. In July 1991, Family Court issued a temporary order permitting petitioner to relocate but directed that the children remain with respondent until further order of said court. When petitioner failed to return the children following a scheduled visitation in August 1991, respondent commenced a contempt proceeding. Although Family Court declined to find

petitioner in contempt, it did order that the children be returned to respondent.[1]

The custody hearing commenced in September 1991, by which time the children were residing with petitioner in Onondaga County and respondent had moved back to Suffolk County. During the course of the hearing, petitioner and respondent testified at length regarding custody and visitation issues, and testimony also was received from Kathleen Morris, a psychologist who evaluated the parties and their children in November 1990 and August 1991, and Neil Grossman, a psychologist who met with respondent and the children in the summer of 1991. At the conclusion of the testimony, Family Court found that petitioner had failed to demonstrate the extraordinary circumstances necessary to justify a geographic relocation and, further, that relocation was not in the children's best interests. Additionally, Family Court denied the parties' respective applications for sole custody and, instead, awarded the parties joint legal custody, with physical custody to respondent and visitation to petitioner.

In the interim, and during the course of the custody hearing, Family Court issued several orders regarding respondent's telephone access to the children and the manner in which the parties were to conduct themselves. In December 1991, respondent moved to have petitioner found in contempt for violating a November 27, 1991 directive governing respondent's telephone contact with the children. By order dated January 4, 1992 and entered January 6, 1992, Family Court found petitioner to be in contempt but issued a 30-day suspended sentence conditioned upon detailed instructions as to future telephone contact. Thereafter, in May 1992, respondent again moved to hold petitioner in contempt for, *inter alia,* violating the January 6, 1992 telephone access order and a temporary order of protection entered December 21, 1990 directing, *inter alia,* that petitioner not disparage respondent in front of the children. Pending a hearing on this matter, Family Court issued an order dated June 12, 1992 and entered June 15, 1992 prohibiting the parties from disseminating any information concerning the issues before the court, and respondent subsequently commenced yet another contempt proceeding based upon petitioner's violation of both the June 15, 1992 and December 21, 1990 orders. Thereafter, in November 1992, Family Court rendered a decision finding petitioner in con-

---

1. This contempt proceeding is not at issue on appeal.

tempt of the December 21, 1990, January 6, 1992 and June 15, 1992 orders.[2] These appeals by petitioner followed.

Turning first to Family Court's custody determination, it is well settled that the primary consideration in any custody matter is the best interest of the child *(see, e.g., Matter of Williams v Williams,* 188 AD2d 906, 907). To that end, "alteration of an established custody arrangement will be ordered only upon a showing of sufficient change in circumstances reflecting a real need for change in order to insure the continued best interest of the child" *(Matter of Van Hoesen v Van Hoesen,* 186 AD2d 903; *see, Matter of La Valley v La Valley,* 199 AD2d 896). "Such a determination, in turn, involves inquiry into a number of factors, including * * * each parent's past performance, relative fitness and ability to provide for and guide the child's intellectual and emotional development" *(Matter of Williams v Williams, supra,* at 907; *see, Matter of Dinino v Deima,* 173 AD2d 1017, 1018). In this regard, Family Court's factual findings are traditionally accorded great deference and will be set aside only where they lack a sound and substantial basis in the record *(see, e.g., Matter of Van Hoesen v Van Hoesen, supra,* at 904; *Finn v Finn,* 176 AD2d 1132, 1132-1133).

Applying these principles to the matter before us, we cannot say that Family Court's decision is unsupported by the evidence. The record plainly establishes a persistent effort on petitioner's part to prevent the children from seeing and/or establishing a meaningful relationship with respondent and, in our view, petitioner's interference with respondent's visitation rights was sufficiently egregious to warrant a change in custody *(see, Matter of Carl J. B. v Dorothy T.,* 186 AD2d 736; *Finn v Finn, supra; compare, Matter of Muzzi v Muzzi,* 189 AD2d 1022; *Matter of Clary v Bond,* 186 AD2d 869). Not only is the record replete with examples of petitioner's interference in this regard, but a fair reading of petitioner's testimony indicates that she simply fails to recognize and appreciate respondent's role as the children's father and/or her obligation to encourage the children to develop a meaningful relationship with him. For example, with respect to the issue of telephone contact, petitioner essentially took the position that respondent and the children should communicate only when

---

2. Although the parties tend to refer to the various orders by the dates upon which they were issued, our discussion will refer to the respective orders by the dates upon which they were entered.

the children feel the need to do so. When questioned regarding visitation, petitioner was quite vague regarding the amount of visitation she felt would be appropriate and generally evidenced a reluctance to commit to ensuring that the children did indeed spend sufficient quality time with respondent to develop and maintain a strong emotional bond.

Additionally, the record portrays with remarkable clarity petitioner's inability to refrain from involving the children in her personal conflicts with respondent and the effect this has upon the children's relationship with him (see generally, Gage v Gage, 167 AD2d 332; Matter of Eastman v Drennen, 122 AD2d 397).[3] In this regard, both psychologists testified that petitioner was "too close" to or "overinvolved" with the children which, in turn, led to the children "parroting" petitioner's negative feelings toward respondent. We therefore conclude, based upon our review of this and other evidence in the record, that Family Court's determination is supported by the evidence and, as such, should not be disturbed.[4] In light of this conclusion, we need not consider whether petitioner demonstrated the extraordinary circumstances necessary to permit her relocation with the children. Were we to do so, however, we would find that petitioner did not meet her burden of proof in this regard.

We now turn to the disposition of the various contempt proceedings. Judiciary Law § 753 (A) (3) provides that a party may be held in civil contempt for failing to obey a "lawful

3. The record also reflects that petitioner repeatedly has attempted to portray respondent as a child abuser (see generally, Matter of Carl J. B. v Dorothy T., 186 AD2d 736, supra; Matter of Eastman v Drennen, 122 AD2d 397, supra). Although subsequent investigations established that the allegations were unfounded, respondent testified that these complaints impeded his ability to discipline the children because Andrew frequently would yell "child abuse" when respondent attempted to discipline him in public.

4. We note in passing that the mere fact that Family Court's custody determination was not in accordance with the recommendations made by Morris and the Law Guardian does not mandate that the court's decision be set aside. We have previously held that "[t]hese recommendations, although undeniably important and worthy of serious consideration, are not to be considered determinative * * * and, indeed, Family Court would [be] seriously remiss if it * * * delegated its fact-finding role and ultimate determination to [such] individuals" (Matter of Perry v Perry, 194 AD2d 837, 838). Moreover, the record indicates that both Morris and the Law Guardian emphasized the importance of ensuring that respondent was provided with regular and liberal visitation with the children in the event physical custody remained with petitioner and, as we have already observed, petitioner is either unable or unwilling to comply.

mandate of the court".[5] The mandate, in turn, must be clearly expressed and it must be demonstrated that the offending conduct "defeated, impaired, impeded, or prejudiced" a right or remedy of the complaining party (Judiciary Law § 753 [A]; *see, Matter of Frandsen v Frandsen,* 190 AD2d 975).

Initially, with respect to petitioner's violation of what the parties have denominated as the November 27, 1991 telephone access order, we have been advised that the file maintained by Family Court for these proceedings does not contain a written order bearing this date. Although prevailing case law indicates that an oral "order" or directive, issued in the contemnor's presence, placed upon the record and transcribed into the minutes of the proceeding, may be deemed a "mandate" within the meaning of General Construction Law § 28-a and, hence, may form the basis for contempt under Judiciary Law § 753 (A) (3) *(see, e.g., Rudnick v Jacobson,* 284 App Div 1064; *Silverman v Seneca Realty Co.,* 154 Misc 35, 41; *cf., Fuerst v Fuerst,* 131 AD2d 426), the record before us does not appear to contain a transcript of the November 27, 1991 proceedings in Family Court regarding telephone access.[6] Thus, absent either a written order or a transcript of the proceedings at which the oral directive was issued, we cannot find that a lawful mandate was in effect which, in turn, precludes us from finding that petitioner was in contempt. Accordingly, Family Court's January 6, 1992 order, insofar as it found petitioner to be in contempt of the November 27, 1991 "order", must be reversed.[7]

Petitioner also challenges Family Court's determination finding her to be in contempt of the January 6, 1992 order,

5. Judiciary Law § 753 is applicable to Family Court proceedings pursuant to Family Court Act § 156.

6. The only transcript contained in the record bearing this date relates to Family Court's in camera interview with the parties' children. Although Family Court did make reference to telephone contact during the course of the in camera proceeding, whatever directive the court issued to petitioner is not reflected in those minutes.

7. That the November 27, 1991 "order" apparently was based upon the detailed instructions issued by Family Court on October 16, 1991, the text of which is included in the record, is of no moment. Both respondent's petition for contempt and Family Court's January 6, 1992 order make specific reference to an "order" dated November 27, 1991, and we simply cannot accept, absent some form of documentation, that the instructions issued on those respective dates were indeed the same. We note, however, that those provisions in Family Court's January 6, 1992 order setting forth the terms of respondent's contact with the children and imposing upon petitioner certain obligations in this regard remain unaffected.

which directed that respondent have daily telephone contact with the children and required petitioner to, *inter alia,* encourage the children to speak with respondent. In our view, petitioner's own testimony supports Family Court's finding that petitioner violated the terms of Family Court's January 6, 1992 order and, as such, Family Court's finding of contempt should be upheld.

We reach a contrary conclusion, however, with respect to petitioner's alleged violation of an order issued by Family Court and entered December 21, 1990 which, *inter alia,* directed the parties to refrain from discussing the merits of the various proceedings with the children and/or disparaging each other in the children's presence,[8] and an order issued by Family Court and entered June 15, 1992 which prohibited the parties from "disseminating orally or in writing any information concerning the issues before the Albany County Family Court". Following the issuance of the December 21, 1990 order, petitioner filed a complaint with respondent's employer alleging harassment and child abuse, and Erin was interviewed as part of the employer's investigation. Although Family Court found that petitioner's conduct in this regard placed her in contempt of the December 21, 1990 order, we cannot agree. Allowing Erin to be interviewed is not, in our view, the functional equivalent of disparaging respondent and/or discussing with Erin the merits of the proceedings pending in Family Court. Thus, although petitioner's decision to involve her child in the underlying investigation may have been ill advised, the relevant order did not prohibit such activity and, hence, Family Court's finding of contempt cannot stand.

As to petitioner's alleged violation of the June 15, 1992 order, the record indicates that on June 19, 1992, petitioner filed a petition in Onondaga County alleging harassment and seeking an order of protection. As a result of statements made by petitioner at her appearance before Onondaga County Family Court, another child abuse investigation was commenced and Erin was interviewed. Although petitioner's repeated attempts to portray respondent as a child abuser are not looked upon with favor by this Court, the June 15, 1992 order does not, on its face, preclude petitioner from seeking an order of protection and/or reporting alleged instances of child

---

8. Although petitioner denied receiving a copy of this order, she acknowledged that she had been made aware of the pertinent provisions of the order and knew that she was not to discuss these proceedings with the children and/or disparage respondent in front of them.

abuse. In this regard, we note that at the conclusion of the hearing on the contempt petitions Family Court stated: "The [June 15, 1992 order] that this Court issued needs to be clarified. It was not the Court's intention to prohibit the parties from talking about the case, but only to prevent the filing of any more collateral complaints, hotline reports, on matters that had already been heard or are pending in the Albany County Family Court. * * * I am not precluding people from doing what they have to do, however, if you have to make a petition or application to Family Court, it must be done in Albany County Family Court until you get my decision in this matter." Thus, there appears to have been some legitimate confusion regarding the scope of Family Court's June 15, 1992 order, and inasmuch as that order does not clearly reflect the court's stated intent, we cannot uphold Family Court's finding of contempt.

As to petitioner's challenge to the order of protection issued by Family Court on December 15, 1992, we note that the order expired by its own terms on December 15, 1993 and, as such, petitioner's appeal is moot. Petitioner's remaining arguments, including her assertion that an exception to the mootness doctrine lies under the circumstances present here (see, Matter of Hearst Corp. v Clyne, 50 NY2d 707, 714-715), have been examined and found to be lacking in merit.

Mikoll, J. P., White and Yesawich Jr., JJ., concur. Ordered that the order entered January 6, 1992 is modified, on the law, without costs, by reversing so much thereof as found petitioner to be in contempt of an order of the Family Court of Albany County dated November 27, 1991, and, as so modified, affirmed. Ordered that the order entered August 4, 1992 is affirmed, without costs. Ordered that the order entered December 15, 1992 is modified, on the law, without costs, by reversing so much thereof as found petitioner to be in contempt of an order of the Family Court of Albany County entered December 21, 1990 and an order of the Family Court of Albany County entered June 15, 1992, and, as so modified, affirmed. Ordered that the appeal from the order entered December 15, 1992 is dismissed, as moot, without costs.

