■ In the Matter of NORMAN DAVIS, Appellant, v KATHLEEN DAVIS, Respondent. [658 NYS2d 548] —Casey, J. Appeal from an order of the Family Court of Sullivan County (Meddaugh, J.), entered April 19, 1996, which, *inter alia*, granted respondent's cross application, in a proceeding pursuant to Family Court Act article 6, for custody of the parties' child.

Petitioner and respondent were married in June 1992. Soon after the parties separated in August 1993, each filed a petition seeking sole custody of their son, Zachary (born in 1991). After a hearing, Family Court awarded respondent sole custody with liberal visitation to petitioner. In making said determination the court, *inter alia*, determined that the child, although biracial, could just as easily be raised in respondent's all-white household as he could in petitioner's biracial household. The court did, however, give petitioner ultimate decision-making authority with regard to Zachary's religious upbringing as well as his educational needs. Petitioner now appeals.

Preliminarily, petitioner argues that, in arriving at its determination, Family Court failed to consider race as a factor. Petitioner specifically contends that when such factor is considered, his home, which consists of petitioner, who is African-American, his paramour, who is white, and their biracial son, would be the more appropriate environment for the child rather than respondent's all-white household. It is well established that in determining custody disputes between two parents, the applicable standard is the child's best interest (*see, Eschbach v Eschbach*, 56 NY2d 167, 171; *Matter of King v King*, 225 AD2d 819, 820, *lv denied* 88 NY2d 806). While there are no absolutes in custody determinations (*see, Friederwitzer v Friederwitzer*, 55 NY2d 89, 94), there are factors to weigh and consider, including "each parent's relative fitness and ability to guide the child's intellectual and emotional development, as well as the quality and stability of the parties' respective home environments" (*Matter of Kazmi v Kazmi*, 201 AD2d 857, 858; *see, Matter of Brown v Skalwold*, 228 AD2d 749, 752, *lv*

*dismissed* 89 NY2d 860). Furthermore, race "is not a dominant, controlling or crucial factor" but must be "weighed along with all other material elements of the lives of [the] family" (*Farmer v Farmer*, 109 Misc 2d 137, 147).

Contrary to petitioner's contention, Family Court did take into consideration that Zachary is biracial. In so doing Family Court cited to the testimony of one of petitioner's professional witnesses, who opined that although it makes sense for a child to be raised in an environment that reflects his or her cultural heritage, a biracial child could just as easily be raised in a white household as long as the parent was loving and nurturing. Furthermore, the evidence does not support the conclusion that Zachary would be denied his biracial identity, and any concerns in this regard are superficial considering petitioner has been granted liberal visitation. Regarding petitioner's further allegation of racism against respondent's boyfriend, there is no credible evidence that such exists. While it is reprehensible that Zachary has been exposed to the term "nigger", noticeably lacking from the proof is how the child became associated with this term.

Examining the totality of the circumstances, including the various factors previously noted, we reject petitioner's contention that Family Court's award of sole custody to respondent is against the weight of the evidence. In arriving at this conclusion we are guided by the principle that Family Court's determination is entitled to great deference, as it had the opportunity to hear the witnesses and weigh their credibility (*see*, *Matter of De Losh v De Losh*, 235 AD2d 851, 853; *Matter of Nicotera v Nicotera*, 222 AD2d 892, 893). Furthermore, Family Court's findings will only be set aside if they lack a sound and substantial basis in the record (*see*, *Matter of King v King*, 225 AD2d 819, 821, *supra*; *Matter of Betancourt v Boughton*, 204 AD2d 804, 806).

Many, if not most, of petitioner's arguments in this regard attack Family Court's determination for failing to credit the proof he put forward showing that he was the better custodial parent and that respondent, for a variety of reasons, was less fit.[1] It is clear, however, that Family Court considered all of the testimony presented and determined that, despite petitioner's positive attributes, including his superior financial situa-

---

1. For example, petitioner pointed out that respondent had bulimia and he attempted to show that the child was mimicking that behavior. While the proof showed that respondent had bulimia in the past, petitioner's experts were hard-pressed to say that a child of Zachary's age could be afflicted with this eating disorder. Significantly, no one testified that Zachary was mal-

tion, respondent was the better choice as custodian. The evidence, including the testimony and evaluation of the court-appointed psychiatrist, indicates that petitioner has a low tolerance for frustration, is somewhat controlling, is unwilling to compromise and is easily agitated. Respondent, on the other hand, is more flexible in dealing with Zachary's day-to-day requirements, has a strong attachment to him and has provided him with a greater continuity of care.

To the extent that petitioner argues that Family Court erred in failing to consider his allegations of sexual abuse, we find, as did Family Court, that such allegations were not genuine. Nor did Family Court abuse its discretion when it failed to recognize one of petitioner's witnesses as an expert in the area of sexual abuse (*see, Meiselman v Crown Hgts. Hosp.*, 285 NY 389, 398-399; *Beck v Albany Med. Ctr. Hosp.*, 191 AD2d 854, 857). Furthermore, petitioner's attack on the expert testimony of the court-appointed psychiatrist merely raised a question of credibility for Family Court to determine (*see, Matter of Karen Y.*, 156 AD2d 823, 826, *lv denied* 75 NY2d 710). Significantly, this witness was the only expert that interviewed both parties, the child and the parties' respective paramours.

We finally reject petitioner's contention that Family Court erred when it granted respondent sole custody but allowed him to determine Zachary's religious upbringing and educational needs. First, Family Court is not precluded, as a matter of law, from ordering this type of custody arrangement.[2] In addition, Family Court's order, although giving petitioner decision-making power over these issues, specifically limited petitioner's rights so as not to interfere with the day-to-day functioning between respondent and the child, a situation we find workable here. Finally, respondent, who was granted sole custody, is not offended by the situation. We therefore decline to disturb this aspect of the award.

Cardona, P. J., Mercure, Peters and Spain, JJ., concur. Ordered that the order is affirmed, without costs.

─────────

*nourished and, in fact, Family Court specifically noted that he was "healthy and robust".*

2. We note that in *Trapp v Trapp* (136 AD2d 178), the First Department, while determining that joint custody was not feasible, nevertheless allowed joint decision-making with respect to religion and citizenship (*id.*, at 183).