■ In the Matter of JAMIE C. MORGAN, Respondent, v STACEY A. BECKER, Appellant. [666 NYS2d 820] —Spain, J. Appeal from an order of the Family Court of Tompkins County (Sherman, J.), entered June 25, 1996, which, *inter alia*, granted petitioner's application, in a proceeding pursuant to Family Court Act article 6, for modification of a prior order of custody.

The parties' son, Brandon (born in 1994), was born while the parties cohabitated; during this period of cohabitation respondent's daughter, Rachel, born (in 1991) from a previous relationship, also resided with the parties. They cohabitated until August 1994 at which time they separated and entered into an agreement providing respondent with custody of Brandon; a Family Court order incorporating the agreement was entered August 31, 1994. Thereafter, petitioner exercised regular visitation with Brandon and during this period of time another child,

Alexander (born in 1995) was conceived. Although petitioner initially refused involvement with Alexander and denied paternity, following the results of blood tests in March 1996 he admitted paternity and sought involvement in Alexander's life. By petition dated December 7, 1995 and amended in March 1996 to include, *inter alia*, a request for custody of Alexander, petitioner sought custody of both children. Following several hearing days in April and May 1996, at which evidence was limited to events following the entry of the August 1994 order, Family Court rendered a decision and order granting petitioner custody of the children. Respondent appeals.

We affirm. It is beyond dispute that the best interests of the children is the primary consideration in a child custody matter (*see, Eschbach v Eschbach*, 56 NY2d 167; *Friederwitzer v Friederwitzer*, 55 NY2d 89; *Matter of Davis v Davis*, 240 AD2d 928; *Matter of King v King*, 225 AD2d 819, *lv denied* 88 NY2d 806; *see also*, Domestic Relations Law § 240 [1]); moreover, there is no prima facie right to the custody of a child in either parent (*see*, Domestic Relations Law § 70 [a]). Further, the alteration of an established custody arrangement will be ordered only on a sufficient showing of a change in circumstances warranting a real need for change in order to insure the continued best interests of the children (*see, Matter of Kamholtz v Kovary*, 210 AD2d 813, 814; *Matter of Williams v Williams*, 188 AD2d 906, 907; *Matter of Van Hoesen v Van Hoesen*, 186 AD2d 903; *see also*, Family Ct Act § 652 [a]).

The determination of best interest requires an inquiry into a number of factors "including the quality of the parents' home environments, the length of time the present custody arrangement has been in place and each parent's past performance, relative fitness and ability to provide for the child's intellectual and emotional development" (*Matter of Irwin v Neyland*, 213 AD2d 773, 774). We are also guided by recognition of Family Court's unique opportunity to assess the credibility of the witnesses and observe their demeanor, as well as the principle that the factual findings of Family Court are afforded great deference on appeal (*see, Matter of De Losh v De Losh*, 235 AD2d 851, 852, *lv denied* 89 NY2d 813; *Matter of Nicotera v Nicotera*, 222 AD2d 892; *Matter of Kamholtz v Kovary, supra*, at 814) and will not be disturbed if supported by a sound and substantial basis in the record (*see, Matter of Copeland v Copeland*, 232 AD2d 822, *lv denied* 89 NY2d 806; *Matter of Cline v Cline*, 229 AD2d 671; *Matter of Betancourt v Boughton*, 204 AD2d 804; *Matter of Bogert v Rickard*, 199 AD2d 587, 588).

Here, we conclude that the record amply supports Family

Court's determination. In a lengthy and thorough decision, Family Court set forth what it determined to be substantial changes in the lives of the parties which directly affected the children following the 1994 stipulation. The record reveals that, at the time of the hearing, respondent was newly employed at a restaurant in Chemung County which required a lengthy commute to work and to her day care provider in Tompkins County, all of which resulted in excessive day care. She also worked as a driver for a limousine service and routinely picked up the children after midnight following work. Further, during one 16-month period respondent used the services of upwards of seven different day care providers and the care the children were provided by respondent and her boyfriend raise many questions relating to their welfare.

Significantly, the record reveals, *inter alia*, that the children were left overnight with their day care provider on a number of occasions; on two particular occasions in order to allow respondent to engage in nonwork-related activities, one of which was purely social and the other was to attend a limousine drivers' convention. One day care provider testified that when the children were dropped off, respondent did not provide proper supplies or clothing. The record supports Family Court's findings that on one occasion respondent left the children, including Alexander in his car seat, at about 2:00 A.M. in the living room of her day care provider without notifying the day care provider who was asleep in another part of the house; that in November 1995 she left Alexander outside on an unheated porch during the night because he was crying and she needed sleep; and that she once left the children with an unfamiliar 17-year-old boy when her regular day care provider was late getting home. The record also reveals that in September 1995 respondent's boyfriend, with whom she and the children resided at the time of the hearing, left Brandon in his car unattended when he went into a supermarket to get himself a soda.

Family Court's finding that respondent harbors deep resentment toward petitioner, which affects both parties' ability to care for the children, is also supported in the record; in Family Court's view, and we agree, petitioner demonstrated a greater ability to handle the antagonistic nature of the parties' relationship in a positive manner for the welfare of the children. There is also support in the record for Family Court's findings that petitioner, aided by his fiancée, can provide a more stable, financially secure and positive environment for the children including, but not limited to, a more structured day care situa-

tion without excessive travel time, a larger and more orderly and tidy home, and a less emotionally charged home life. Examining the totality of the circumstances, including the various factors that are to be considered in a best interest analysis (*see, Young v Young*, 212 AD2d 114, 117-118; *Matter of Belden v Keyser*, 206 AD2d 610, 611), we find that Family Court's award of custody to petitioner has a sound and substantial basis in the record (*see, Matter of Beyer v Tranelli-Ashe*, 195 AD2d 972).

We further conclude that Family Court properly precluded the introduction of evidence which predated the August 1994 agreement. Notably, it was respondent's attorney who asked the court, at a point early in the hearing, to exclude evidence prior to August 1994; this ruling actually limited the scope of respondent's evidence (*compare, Matter of Painter v Painter*, 211 AD2d 993). Furthermore, we find no support in the record for petitioner's contention that the Law Guardian was biased or that her report and recommendation in favor of petitioner unduly influenced the court into making an erroneous determination. Although, in our view, it was inappropriate for Family Court to allow the Law Guardian to be called as a witness for one of the parties, under the circumstances of this case there was no harm to the children, especially when the Law Guardian's testimony was limited to her observations during home visits to each of the parties' residences. Additionally, the children in this proceeding were too young to be interviewed; thus, the issue of confidentiality with respect to any privileged communications between the children and their Law Guardian did not exist (*see, Matter of Angelina AA.*, 211 AD2d 951, 953, *lv denied* 85 NY2d 808; *Matter of Bentley v Bentley*, 86 AD2d 926, 927).

We have considered respondent's remaining contentions and find them to be without merit.

Mercure, J. P., Casey, Peters and Carpinello, JJ., concur. Ordered that the order is affirmed, without costs.