■ In the Matter of RANDI BARNHART, Respondent, v GINA COLES, Appellant. [680 NYS2d 23] —Mikoll, J. P. Appeals (1) from an order of the Family Court of Delaware County (Estes, J.), entered September 22, 1997, which granted petitioner's application, in a proceeding pursuant to Family Court Act article 6, for modification of a prior order of custody, and (2) from an order of said court, entered January 8, 1998, which denied respondent's motion for renewal.

The parties are the parents of a son, Joshua, who was born in 1994. Prior Family Court proceedings resulted in orders granting custody to respondent and visitation to petitioner. Petitioner enjoyed liberal visitation with Joshua, including alternate weekends and every Wednesday, until January 1, 1997. After that date, respondent refused to permit further visitation. On January 10, 1997, petitioner filed the first of three petitions seeking to have respondent held in contempt for violating the visitation order. Three days later, respondent filed a petition seeking to terminate all visitation. On February 24, 1997, petitioner commenced the instant custody proceeding.

On March 19, 1997, a hearing was held on petitioner's contempt petitions. Family Court dismissed the petitions solely upon the ground that the prior visitation order lacked the requisite specificity to sustain a finding of contempt. The court modified the prior order to add the specificity previously lacking and ordered that visitation resume in accordance therewith. Sole custody was continued in respondent. A hearing upon petitioner's custody petition was held on July 1, 1997[1] and, finding a change in circumstances warranting modification of the existing custody order, Family Court granted sole custody of Joshua to petitioner. Respondent appeals.

The hearing testimony established that petitioner exercised overnight visitation with Joshua from December 31, 1996 to January 1, 1997. Several hours after Joshua's return, respondent made several telephone calls to petitioner and his fiancée, Donna Staubitz. In the first conversation with Staubitz, respondent expressed displeasure over comments allegedly made by Staubitz concerning a haircut which respondent had given to Joshua.[2] Approximately one-half hour later, respondent again telephoned and questioned Staubitz about a bruise on Joshua's foot. Staubitz told respondent that she was unaware of a bruise on his foot, but that she had noticed a bruise on his thigh. According to Staubitz, respondent stated that she was aware of the bruise on Joshua's thigh and was not concerned about it. In the third call, respondent spoke with petitioner, telling him that Joshua had said that petitioner hurt his thigh

---

**1.** Immediately prior to commencement of the hearing, respondent withdrew her petition seeking to terminate visitation.

**2.** The testimony also established that on a prior occasion problems arose concerning Joshua's haircut. Petitioner testified that respondent withheld visitation after he took Joshua for a haircut without her permission, while respondent conceded only that there was an argument about it. Family Court noted that "it is clear that the mother considers Joshua's haircuts to be a very important aspect of her rights as custodial parent".

by squeezing it, which petitioner denied. Petitioner and Staubitz both testified that they had noticed the bruise on Joshua's thigh and, based on its coloration, opined that it had been sustained prior to the overnight visitation with petitioner from December 31, 1996 to January 1, 1997.[3]

In her testimony, respondent denied telling Staubitz that she was previously aware of the bruise on Joshua's thigh. She maintained that she withheld visitation based upon the bruise allegedly sustained by Joshua while with petitioner, and because Joshua was afraid of his father and did not want to visit with him. She also testified that in denying visitation, she relied upon the advice of William Hayes, a clinical social worker. The record, however, established that respondent neither spoke nor met with Hayes until February 13, 1997.

Family Court specifically credited the testimony of petitioner and Staubitz and specifically discredited that of respondent, finding that respondent was in fact previously aware of the bruise and that she intentionally fabricated the allegation to justify withholding visitation to petitioner. The court further found that this fabrication was exacerbated by respondent's subsequent actions, which included taking Joshua to a neighbor to examine the bruise, photographing his leg and taking him to a doctor two days later. The doctor's report reflects that respondent reported that Joshua stated that petitioner squeezed his leg, but Joshua would not state such or give any details to the doctor. The doctor's notes further reflect that a referral to Child Protective Services was made but not accepted, as it did not appear to be a reportable case. On January 29, 1997, the same day on which petitioner was permitted a supervised visit with Joshua (for the first time in nearly a month), a Child Protective Services caseworker came to petitioner's home in response to a report received that day concerning the bruise on Joshua's thigh. According to petitioner, the caseworker expressed surprise that the bruise in question was one in existence on January 1, 1997, as she was under the impression that the January 29, 1997 report related to a recent bruising. The investigation determined that the allegations were unfounded.

We affirm. The paramount concern in any custody proceeding is, of course, the best interest of the child. To justify alteration of an established custody arrangement, there must be evidence of a sufficient change in circumstances warranting

3. The Law Guardian expressed the same opinion during the hearing after viewing the photographs produced by respondent allegedly depicting the bruise.

the transfer to insure the continued best interest of the child (*see, Matter of Morgan v Becker*, 245 AD2d 889; *Matter of Betancourt v Boughton*, 204 AD2d 804). We emphasize that in reviewing a custody determination made by Family Court, we accord great deference to its factual findings and credibility assessments, and will not disturb them unless we are satisfied that they lack a sound and substantial basis in the record. Applying these principles to our review of the record herein, we are not persuaded that Family Court's determination lacks a sound and substantial basis. It is uncontroverted that, with the exception of several supervised visits to which petitioner agreed as it was his only opportunity to see Joshua, respondent denied petitioner visitation for the period January 1, 1997 to March 20, 1997. Family Court made explicit, detailed findings in support of its conclusion that respondent resorted to deceit and fabrication to undermine petitioner's relationship with Joshua, and that the child suffered seriously from the termination of contact with petitioner and respondent's attempt to convince the child that petitioner did not wish to see him.

Additional factors cited by Family Court support its determination, including concern over respondent's alleged abuse of alcohol. The hearing testimony established that on Labor Day in 1996 respondent arrived to pick up Joshua in an intoxicated condition. Petitioner telephoned the police to prevent respondent from driving her vehicle with Joshua. Police determined that respondent's blood alcohol content was 0.19%. Respondent refused to permit Joshua to stay with petitioner and other arrangements were made for his care until respondent regained sobriety. The court also cited testimony that Joshua had developed the behavior of disciplining himself and calling himself "bad" over minor incidents such as spilling food, and noted that the mental health clinic report observed that petitioner was "less rigid" than respondent in interacting with Joshua. Joshua exhibited stuttering and bed-wetting behaviors when visitation was curtailed, which abated once the former routine was reestablished. Finally, the court cited petitioner's reliance upon the court system, in contrast to respondent's unilateral disregard of prior orders, as evidence of his superior ability to act "in a positive manner for the welfare of the child".

We reject respondent's contention that she was denied effective assistance of counsel in the custody hearing because her attorney did not call Hayes to testify in support of her position that she terminated visitation to protect Joshua from physical injury. Her motion for renewal pursuant to CPLR 2221 (a),

5015 generally and 5015 (a) (2) upon this ground was properly denied. A decision not to offer testimony does not necessarily constitute ineffective assistance of counsel (*see, Matter of Morlando v Morlando*, 240 AD2d 852, 854, *lv denied* 91 NY2d 802). In this case, despite respondent's testimony that she withheld visitation on the basis of advice received from Hayes, it is clear from the record that neither respondent nor Joshua met with Hayes until approximately six weeks after visitation was terminated. Furthermore, it is clear that Family Court's decision was based in large part upon its negative assessment of respondent's credibility as evidenced by her demeanor, the inconsistency of her actions and allegations, and the harm to which she exposed the child.

Mercure, Crew III, Yesawich Jr. and Peters, JJ., concur. Ordered that the orders are affirmed, without costs.

