■ KELLY A. BOLOGNA, Respondent, v JAMES J. BOLOGNA, Appellant. [719 NYS2d 755] —Carpinello, J. Appeal from a judgment of the Supreme Court (Reilly, Jr., J.), granting, *inter alia*, plaintiff a divorce and awarding sole custody of the parties' children to plaintiff, entered November 30, 1999 in Schenectady County, upon a decision of the court.

The sole issue before this Court is the propriety of Supreme Court's decision to award plaintiff sole custody of the parties' two children. Defendant claims that joint custody was warranted under the circumstances. In its decision, Supreme Court found the record "replete with examples of the parties' inability to communicate effectively and make joint decisions about their children" and that their respective personality traits—defendant is rigid, demanding and controlling and plaintiff is passive and submissive—"have created an air of conflict and tension for the children" which makes joint custody inappropriate. Noting defendant's demonstrated bias in favor of his son over his daughter and his unhealthy "enmeshment" with the children, as well as the court's concern that defendant would exclude plaintiff from the children's life if he was awarded custody, the court awarded sole custody to plaintiff with visitation to defendant. Finding a sound and substantial basis in the record for the court's decision (*see, e.g., Matter of Ebel v Urlich*, 273 AD2d 530; *Matter of De Losh v De Losh*, 235 AD2d 851, *lv denied* 89 NY2d 813), we affirm.

The record reveals that subsequent to the commencement of the instant divorce action, the parties have been unable to agree on both minor and major issues in the children's lives, including, for example, their son's schooling, his participation in sporting events, the children's bedtime, discipline, and the dispensing of vitamins and medication. At trial, the parties also exchanged accusations of verbal and physical altercations allegedly initiated by the other. For a significant time period, they communicated primarily via electronic messages. Defendant claims that Supreme Court's determination was based "almost exclusively" on one of their more recent disputes, namely, their son's educational program for the 1999-2000 school year. The parties' inability to reach a consensus on their

son's education was but one of numerous points of contention between them and the court in no way overemphasized this particular dispute in rendering its decision.

Defendant further claims that once both parents were not living under the same roof, their relationship improved and they engaged in a "pattern of cooperation and mature, civilized behavior." The parties physically separated in February 1998. In evaluating their relationship after this point, the record reveals that defendant caused continued friction by being present at their son's school when plaintiff was scheduled to pick him up, that he continued to be inflexible about the visitation schedule on nights their son had sporting practices, that he undermined plaintiff's attempt to discipline their son for spitting on her and that he ignored her repeated requests not to interrupt the children's nightly bedtime routine by telephoning them at that time. In July 1998, the parties disputed over the details of a recommended attention deficit disorder evaluation for their son. Finally, between February 1998 and October 1998, defendant's sister was present at the marital residence twice weekly during the transition of the children between the parties. Defendant's sister testified that she was there partially at defendant's request to ensure smooth, conflict-free transitions. She acknowledged, however, that plaintiff had repeatedly requested that she not be at the house on these occasions; in fact, defendant's sister specifically testified that plaintiff had asked her *every time* she was present at the house to stop coming, yet she disregarded these requests. The purported need for a third party's "presence" during the transition from one parent to another is hardly indicative of two people who are willing and able to effectively communicate and parent two young children.

Defendant further claims that Supreme Court erred in focusing on the parties' "relatively insignificant personality traits" in rendering its decision. A court-appointed clinical psychologist who evaluated the parties in June 1997 and again in June 1998 testified at length about defendant's personality. The thrust of his opinion was that it is difficult for defendant to relinquish control. He stated that defendant has a rigid personality, that is, he has a quality of "unyielding self" and self centeredness in that "what [he] wants is the most important." According to this expert, defendant also has an inability to acknowledge the needs of others. This expert opined that, given his controlling personality, defendant would likely exclude plaintiff from decision making and involvement during the time period the children were with him. In regard to

plaintiff, this expert stated that she is more likely to surrender control over the children to defendant which, in turn, would reduce any conflict the children might experience. He had no reservations about awarding sole custody to her. We hardly deem these qualities to be "insignificant" traits, particularly when the central inquiry before us concerns whether defendant can effectively communicate with plaintiff on issues concerning their children (*see, Matter of Davis v Davis,* 240 AD2d 928).

Defendant also criticizes Supreme Court for "ignoring" this expert's recommendation of joint custody. While this expert recommended joint custody, it was expressly *conditioned* upon defendant's realization that his conduct created problems and his additional affirmative steps to change his behavior. The expert conceded, however, that in the intervening one-year period that he saw defendant, defendant did little to change his behavior. Indeed, he specifically testified that defendant's behavior between June 1997 and June 1998 contributed to the difficulties between the parties, including defendant's exclusion of plaintiff from certain of the children's activities by not timely notifying her of same. He further recognized that a joint custody arrangement between these parties would be a "gamble." Thus, despite defendant's attempts to minimize the parties' differences and his distortion of the expert's recommendation of joint custody, the record fully supports Supreme Court's determination that joint custody is simply inappropriate given the parties' tumultuous relationship and demonstrated inability to meaningfully and consistently communicate effectively concerning matters central to raising the children (*see, e.g., Matter of Oldfield v Robinson,* 267 AD2d 530, 531-532; *Matter of De Losh v De Losh,* 235 AD2d 851, *supra*).

Cardona, P. J., Mercure, Spain and Rose, JJ., concur. Ordered that the judgment is affirmed, with costs.