■ Scott Scialdo, Respondent, v Mary Kernan, Appellant. [754 NYS2d 406] —Cardona, P.J. Appeal from an order of the Family Court of Otsego County (Burns, J.), entered November 28, 2001, which partially granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for custody of the parties' child.

The parties, who never married, have a child, Stephen, born in November 1995. After paternity was established in February 1996, petitioner began biweekly daytime visitation which

expanded to overnight stays when Stephen was about 15 months old. In April 2000, the parties, through mediation, entered into a custody agreement which was submitted to Family Court and, subsequently, incorporated into an order entered in May 2000, which awarded respondent sole custody. The order further stated that either party could petition for joint custody without a change in circumstances. Several months later, petitioner filed for joint custody, however, he withdrew that petition and filed for sole custody in January 2001. After a hearing involving numerous witnesses, Family Court awarded the parties joint legal custody and placed Stephen in the primary physical custody of petitioner subject to respondent's visitation. Respondent appeals.

Initially, we note that an "existing custody order which was the product of an agreement between the parties and not a plenary trial is but one factor to be considered in determining whether modification of that custody arrangement is warranted" (*Matter of Lattuca v Natale-Lattuca*, 293 AD2d 805, 806). In determining custody, the primary focus is on the best interest of the child (*see Eschbach v Eschbach*, 56 NY2d 167; *Friederwitzer v Friederwitzer*, 55 NY2d 89; *Matter of Hudson v Hudson*, 279 AD2d 659, 660-661). Where changed circumstances demonstrate a real need for change, modification will be ordered to insure the continued best interest of the child (*see Matter of Hudson v Hudson, supra* at 660-661; *Matter of Morgan v Becker*, 245 AD2d 889, 890). Moreover, we generally accord great deference to Family Court's factual findings which will be disturbed only " 'if they lack a sound and substantial basis in the record since [Family Court] is in the best position to assess the credibility of witnesses' " (*Matter of Breitung v Trask*, 279 AD2d 677, 678, quoting *Matter of Russo v Russo*, 257 AD2d 926, 927).

Turning to the merits, the testimony of various witnesses demonstrates that respondent's repeated lapses in judgment and lifestyle choices have exposed Stephen to drug and alcohol abuse as well as domestic violence resulting in numerous visits by the police, Department of Social Services (hereinafter DSS) caseworkers and child protective workers. For example, respondent was indicated in a report filed by DSS investigators in 1999 following her failure to adequately supervise Stephen who was then three years old. On that occasion, this young child wandered off from his home which was located on a lake. He walked about 400 feet to a neighbor's house where he was subsequently discovered by searchers asleep in the family room next to a propane heating stove in full operation. The neighbors

were not home. Respondent stated that she watched Stephen walk to the neighbor's house, which he did often to play with their dog. However, she never called to make sure anyone was home. After Kayla, Stephen's half sister, looked for him without success, respondent went to the neighbor's house. She banged on the door, however, there was no answer, so she left and summoned help. It was also revealed that respondent, on occasion, would permit Stephen to walk to the neighbor's house without even watching him knowing that he could not swim, but trusting that he would not go near the lake because "he was afraid of the water."

The record further established that respondent has a history of abusive relationships, having been abused by all three of her former husbands. In another example of poor decision-making, after having her most recent former husband removed from the home for domestic violence that was witnessed by Stephen and required police intervention, she allowed him back into the home two days later only to have him arrested for a second incident of domestic violence, again witnessed by her son. The record also indicates that this same individual, who was often inebriated, threw a television remote at Stephen, which struck him on the forehead causing an injury. On other occasions, respondent allowed various men, who she knew for a very short time, to move into her home. One of these men, Keith Riordan, testified that during their six-month relationship, respondent consumed alcohol almost every night and was intoxicated about four times per week. He also stated that she smoked marihuana.

Testimony by Stephen's parochial school kindergarten teacher established that many times he came to school hungry, extremely tired, not always clean and with inadequate lunches. The teacher indicated that Stephen was behind in basic skills and was a serious behavior problem. Overall, the record establishes that respondent has repeatedly demonstrated a lack of judgment that has and could continue to impact on Stephen's emotional and intellectual development. Moreover, according to Stephen's treating psychologist, the lack of stability in his life and the resulting stress this child experiences contributes to his adjustment disorder.

On the other hand, the record supports Family Court's finding that petitioner "can provide Stephen with a stable, nurturing environment where his needs come first." Petitioner lives in a two-family house which he shares with his father, who enjoys a close relationship with Stephen. The house is located in close proximity to Stephen's school. Further, Stephen's kindergar-

ten teacher testified that on the days he comes to school from petitioner's house, he is "meticulously clean," not hungry, tired or excited. She stated that petitioner prepares adequate lunches and shows greater involvement in the child's educational program and extracurricular activities. Significantly, as Family Court found, petitioner can provide a home free from alcohol abuse and domestic violence and can provide Stephen with the stability that he needs. Notably, the evidence strongly suggests that petitioner will place Stephen's emotional well-being ahead of his own lifestyle desires (*see Matter of Hudson v Hudson*, 279 AD2d 659, 660, *supra*). Moreover, petitioner acknowledges the importance of fostering the relationship between Stephen and respondent (*see Matter of Esterle v Dellay*, 281 AD2d 722, 726) and is committed to doing the same between Stephen and his half sister (*see Matter of Lawrence v Lawrence*, 275 AD2d 985). We also note that the Law Guardian advocated a change in Stephen's custody to petitioner. Under all the circumstances, we find Family Court's determination supported by a sound and substantial basis in the record, and, therefore, we will not disturb it.

Additionally, although we agree with respondent's contention that Family Court improperly admitted certain testimony of Barbara Brennan, a DSS investigator, who testified to unsworn oral statements attributed to one of respondent's former husbands, we find the error harmless "given the quantum of other proof" supporting Family Court's determination (*Matter of Nicole VV.*, 296 AD2d 608, 613, *lv denied* 98 NY2d 616).

We have considered respondent's remaining contentions and find that they lack merit.

Mercure, Spain, Carpinello and Kane, JJ., concur. Ordered that the order is affirmed, without costs.