In the Matter of SCOTT A. SCIALDO, Respondent, v MARY KERNAN, Appellant. (And One Other Related Proceeding.) [788 NYS2d 473]—

Carpinello, J. Appeal from an order of the Family Court of Otsego County (Burns, J.), entered October 14, 2003, which, inter alia, granted petitioner's application, in two proceedings pursuant to Family Ct Act articles 6 and 8, for sole custody of the parties' child.

In November 2001, the parties were granted joint custody of their son, now nine years old, with physical custody to petitioner and alternating weekend visitation to respondent (*see Matter of Scialdo v Kernan*, 301 AD2d 884 [2003]). In March 2003, petitioner sought a temporary order suspending all visitation and filed a separate petition for sole custody. With respect to this latter petition, it was alleged that the parties were no longer able to work together in making decisions about the child, that respondent had made major decisions concerning the child's religion without petitioner's knowledge or consent and that respondent had permitted the child to be in the presence of her husband despite prior orders of protection prohibiting such contact.

At an April 30, 2003 pretrial conference on both petitions, the parties stipulated on the record to an interim visitation schedule whereby respondent would have visitation on alternating Sundays from 11:00 A.M. to 4:00 P.M. under the express proviso that her husband "not be in the presence of [the] child whatsoever during the visitation." The parties also agreed that "the child not be taken to any religious institution, church . . . other than [two specified Roman Catholic churches] until this matter is resolved." These agreements were embodied in a temporary order directing visitation and a temporary order of protection. On June 9, 2003, petitioner filed a violation petition claiming that respondent violated the April 2003 order by bringing the child to the Holy Trinity Russian Orthodox Monastery and by allowing him to be in the presence of her husband on two occasions.

Following a hearing, Family Court awarded petitioner sole custody, granted respondent visitation on alternating Sundays from 1:00 P.M. until 4:00 P.M. and awarded petitioner $1,000 in counsel fees.[1] Respondent appeals, and we now affirm.

We reject respondent's claim that there was insufficient evidence to support Family Court's determination. A change in an established custody arrangement is permitted upon a showing of "sufficient change in circumstances warranting the transfer to insure the continued best interest of the child" (*Matter of Barnhart v Coles*, 254 AD2d 645, 647-648 [1998]; *see Matter of Moreau v Sirles*, 268 AD2d 811, 812 [2000], *lv denied* 95 NY2d 752 [2000]; *Matter of Royea v Hutchings*, 260 AD2d 678, 679 [1999]). Our review of the record reveals that there is a sound and substantial basis for each of Family Court's factual findings, as well as its ultimate decision to grant petitioner sole custody in order to promote the child's best interest (*see Braiman v Braiman*, 44 NY2d 584, 590 [1978]; *see also Matter of Wood v Wood*, 8 AD3d 767, 768 [2004]; *Matter of Meyer v Rudinger*, 285 AD2d 714, 715 [2001]). The principal impediment to continued joint custody was respondent's conduct since the November 2001 custody order, namely, making unilateral decisions in a matter of importance (the child's religion), making false allegations of abuse against petitioner and permitting contact between the child and her husband.

First, despite an agreement by the parties that the child would be brought up Roman Catholic, he became a Russian Orthodox Greek Catholic in April 2000 without petitioner's knowledge,

---

1. With respect to Family Court's decision to commence visitation at 1:00 P.M., we note that it was established at trial that respondent is not available to the child until approximately 12:30 P.M. each Sunday.

consent or involvement. It was not until December 2002, when petitioner began preparing the child for his first communion, that he learned that the child had not only become Russian Orthodox but had made three of his sacraments in that church already, including first communion. According to petitioner, he was "shocked" by these revelations but nevertheless attempted to resolve the matter amicably, to no avail.[2] Respondent's failure to obtain petitioner's input on such significant events in the child's life is indicative of her inability to "cooperate in making joint decisions in matters of importance concerning the child" (*Matter of Darrow v Burlingame*, 298 AD2d 651, 652 [2002]) and to behave in a "mature civilized fashion" (*Braiman v Braiman, supra* at 590).

Additionally, the record supports Family Court's finding that respondent made false allegations of abuse against petitioner on two occasions and inveigled the child to back her up on such allegations. Both reports were investigated and determined to be unfounded (*see Matter of Ciannamea v McCoy*, 306 AD2d 647 [2003]). Furthermore, evidence at the hearing also supports Family Court's finding that respondent willfully violated the April 2003 order when she brought the child to the Holy Trinity Russian Orthodox Monastery where he then encountered her husband. All of these factors lead to the inescapable conclusion that joint custody was no longer workable between the parties and that petitioner was the more appropriate custodian (*see e.g. Matter of Carella v Ferrara*, 9 AD3d 605, 606 [2004]).

As to Family Court's determination to modify visitation, we are again satisfied that it has a sound and substantial basis in the record promoting the child's best interest (*see Matter of Fish v Manning*, 300 AD2d 932, 933 [2002]). In addition to her serious transgressions concerning the child's religion and false allegations of abuse, the record reveals that despite prior orders of protection prohibiting respondent's husband from having contact with the child, respondent permitted numerous incidents of contact between them, including one wherein the three of them shared a bed for the night. Petitioner testified, credibly according to Family Court, that the child suffers from nightmares when re-exposed to respondent's husband. Respondent, on the other hand, obviously lacks critical insight into the nega-

---

**2.** As a further example of respondent's inability to coparent with petitioner, petitioner testified that when he first brought up the child's first communion with respondent, she failed to immediately inform him that he had already completed the sacrament in another church. Rather, petitioner learned this through a letter that respondent thereafter sent to the child's parochial school.

tive impact such exposure has on the child. Her overall conduct, particularly permitting contact between her husband and the child, justifies the limitation on visitation (*see Matter of Wood v Wood, supra*).

We have reviewed respondent's remaining contentions, including the claim that Family Court abused its discretion in awarding counsel fees, and are unpersuaded.

Peters, J.P., Mugglin and Lahtinen, JJ., concur. Ordered that the order is affirmed, without costs.