[792 NYS2d 201]

GEORGE W. REDDER, Appellant-Respondent, v MARY FRANCIS REDDER, Respondent-Appellant.

Third Department, March 10, 2005

**APPEARANCES OF COUNSEL**

*Beatrice Havranek*, Rosendale, for appellant-respondent.

*Moran & Gottlieb*, Kingston (*Andrea Moran* of counsel), for respondent-appellant.

*Isabelle Rawich,* South Fallsburgh, *Law Guardian.*

### OPINION OF THE COURT

LAHTINEN, J.

The parties signed a prenuptial agreement providing for their separate property shortly before their 1991 marriage. During the marriage, plaintiff kept all his property separate from defendant. They had two children, one born in 1994 and the other born in 1995. The marital relationship deteriorated and, in December 1999, defendant signed a separation agreement and a

postnuptial agreement prepared by plaintiff in which she waived any claim to defendant's property in exchange for $8,000 and any claim to maintenance in exchange for a payment of $10,000. She also stipulated at that time to permit plaintiff to have custody of the children, and that stipulation was used to obtain a consent order entered in January 2000. However, by the end of December 1999, before the consent order had even been entered, plaintiff and defendant had resumed residing together in an apparent effort at reconciliation that lasted until September 2001. Both parties ultimately claimed cruel and inhuman treatment as a ground for divorce and each sought custody of the children.

At the commencement of the March 2003 trial, the parties stipulated to mutual divorces on the ground of cruel and inhuman treatment and a trial ensued on the issues of custody, child support and maintenance. Supreme Court found the parts of the separation and postnuptial agreements that spoke to maintenance to be patently unfair and influenced by plaintiff's overreaching. The court thus awarded defendant maintenance in the amount of $1,500 per month for 24 months in addition to the payment provided in the separation agreement. After considering the evidence pertinent to custody, including evidence presented at a *Lincoln* hearing, the court granted joint custody. Physical custody of the children was divided so that they generally spent three days with defendant and four days with plaintiff each week, but more vacation time with defendant than plaintiff. Because of allegations of excessive alcohol use by both parties, Supreme Court issued a one-year order of protection directing that neither party consume alcoholic beverages 24 hours prior to or during custodial time with the children. Plaintiff, an attorney with substantially more income than defendant (who had worked as a legal secretary), was deemed the noncustodial parent for purposes of child support and directed to pay $250 per week. Requests by the parties for counsel fees were denied. The Law Guardian applied for a fee in excess of the statutory limit and for payment of that fee from plaintiff. Supreme Court awarded a fee of $7,125 and directed each party to pay half of that amount to the Law Guardian. Both parties appeal.

■ Plaintiff first argues that Supreme Court erred in modifying the consent custody order and directing joint custody. The modification of an existing order generally must be supported by a showing of a change in circumstances revealing a real need

for the modification to ensure the ongoing best interests of the children (*see Matter of Tavernia v Bouvia*, 12 AD3d 960, 961 [2004]; *Matter of Gregio v Rifenburg*, 3 AD3d 830, 831 [2004]). The agreements setting forth the prior custody arrangement were signed in December 1999 and, before the consent order was entered in January 2000, the parties had resumed living together. The evidence amply supports Supreme Court's findings that, during the ensuing period of nearly two years, both parents were actively involved in raising the children, defendant provided an important role for the emotional well-being of the children, she was more nurturing and more involved in the daily lives of the children, and the children wanted to spend more time with her than was set forth in the consent order. That consent order was entitled to less weight than a disposition following a trial (*see Matter of Crippen v Keator*, 9 AD3d 535, 536 [2004]), and the substantial period of time that both parents resided together with the children following its execution, which resulted in an increased role of defendant in the lives and needs of the children, constituted a sufficient change in circumstances to justify modification of custody. Supreme Court made credibility determinations regarding the conflicting evidence and discussed a host of factors in arriving at its conclusion that joint custody with near equal physical custody time for each parent was in the best interests of the children. Upon review of the record, we discern no reason to disturb those determinations and conclusions (*see Matter of Engwer v Engwer*, 307 AD2d 504, 505 [2003]; *Scialdo v Kernan*, 301 AD2d 884, 885 [2003]).

Next, plaintiff contends that he should not have been directed to pay any child support. Supreme Court noted that "the parties have substantially the same amount of custodial time with the children," and found that during 2001, plaintiff had income of nearly $80,000 while defendant, who had not worked in 2001, had earning potential of about $27,000. The court applied the three-step method from the Child Support Standards Act (*see* Domestic Relations Law § 240 [1-b]) in calculating child support for this essentially shared custody situation (*see Bast v Rossoff*, 91 NY2d 723, 724 [1998]), determined that plaintiff had the greater pro rata share of the child support obligation (*see Baraby v Baraby*, 250 AD2d 201, 204 [1998]), and directed child support accordingly. Upon the facts of this case, we are unpersuaded that this determination should be set aside.

The award of a fee payable equally by the parties directly to the Law Guardian has provoked arguments from both par-

ties. In a contested custody case, children generally "should be represented by counsel of their own choosing or by law guardians" (Family Ct Act § 241; *see Lips v Lips*, 284 AD2d 716, 716 [2001]).[1] Children rarely have the financial means to seek counsel of their own choosing so most law guardians are appointed from the Law Guardian Program, which is governed by a statutory and regulatory framework (*see* Family Ct Act art 2, part 4; 22 NYCRR part 835). To foster the goal of quality and independent representation for children in the vital position of law guardian (*see Matter of Carballeira v Shumway*, 273 AD2d 753, 755 [2000], *lv denied* 95 NY2d 764 [2000]), attorneys who seek to serve in such capacity must apply, be screened by a court, undergo training and meet various criteria (*see generally* 22 NYCRR part 835), and they are governed by the pertinent standards regarding compensation (*see* Judiciary Law § 35 [3]; 22 NYCRR 835.5). With respect to compensation, while the statutes and regulations speak directly to a procedure for payment from the state (*see* Family Ct Act § 248; 22 NYCRR 835.5), there is no specific statutory or regulatory scheme for direct payment of an appointed law guardian by a parent or parents (*see generally* Brandes, Law and the Family, *Compensation of Law Guardians*, NYLJ, July 28, 1998, at 3, col 1). The lack of parameters for a direct-pay system creates the potential for issues about the integrity of the appointment process in such situations (which often pay no attention to the statutory caps on compensation for assigned counsel), draws into question the independence of the law guardian, and raises concerns about fundamental fairness to all children regardless of the economic status of their parents. We have previously stated, albeit in dicta, that "Law Guardian costs shall be payable by the [s]tate" (*Lips v Lips, supra* at 717). We acknowledge that resolution of this issue is susceptible to more than one reasonable view (*see Matter of Plovnick v Klinger*, 10 AD3d 84 [2d Dept 2004]) and there are policy arguments supporting different feasible approaches. However, until the Legislature or Court of Appeals provides otherwise, we are persuaded that the current statutory and regulatory framework should be interpreted as limiting compensation to law guardians appointed pursuant to the Law Guardian Program in a contested custody proceeding to pay-

---

1. The fact that the underlying custody dispute was heard in Supreme Court rather than Family Court does not alter the analysis regarding the role of law guardians (*see Lips v Lips, supra* at 716-717; *Davis v Davis*, 269 AD2d 82, 84 [2000]).

ment by the state (*see Lips v Lips, supra* at 717; *see also* Family Ct Act § 248 ["The costs of law guardians . . . shall be payable by the state of New York"]; *Matter of Lynda A.H. v Diane T.O.*, 243 AD2d 24, 27-28 [4th Dept 1998], *lv denied* 92 NY2d 811 [1998] [holding that Family Court "had no authority to compel the parties to pay the Law Guardian's legal fees and expenses"]; Brandes, Law and the Family, *Compensation of Law Guardians*, NYLJ, July 28, 1998, at 3, col 1).[2] The order directing the parties to pay the Law Guardian directly must thus be reversed, and the Law Guardian can apply for a fee as provided in 22 NYCRR 835.5.

The remaining arguments require little discussion. The duration of the maintenance award, the denial of defendant's request for counsel fees, and the evidentiary rulings regarding expert testimony have all been reviewed and found to fall within Supreme Court's discretion as to such issues. Plaintiff's appeal from the order of protection regarding consuming alcoholic beverages during the time he had physical custody expired on April 24, 2004 and is thus moot.

MERCURE, J.P., CREW III, CARPINELLO and ROSE, JJ., concur.

Ordered that the appeal from the order entered April 24, 2003 is dismissed, as moot, without costs.

Ordered that the order entered May 13, 2003 is reversed, on the law, without costs, and the Law Guardian's motion for payment of a fee directly from plaintiff is denied.

Ordered that the judgment is affirmed, without costs.

---

**2.** We make no comment at this time on whether the state can seek to recoup from a parent in an appropriate situation the funds paid by it to a law guardian. We further note that to the extent our decision in *Gadomski v Gadomski* (245 AD2d 579 [1997]) can be read as permitting a court to order a parent, without the parent's consent, to pay a law guardian directly in a disputed custody case, it should not be followed.