■ In the Matter of DANIEL R. RICHARDSON, Respondent, v HEATHER ALLING, Appellant. [892 NYS2d 673]—

Malone Jr., J.

The parties are the parents of one child (born in 2007) and, pursuant to an informal arrangement, respondent (hereinafter the mother) had been the child's primary custodian since his birth. In January 2008, petitioner (hereinafter the father) commenced this proceeding seeking custody alleging that the mother's home was an unsafe environment for the child. Following a trial, Family Court awarded the parties joint legal custody, with primary physical custody to the father. The mother appeals.

In making an initial custody determination, as here, Family Court was required to consider the best interests of the child by reviewing, among other things, each parent's relative fitness, the quality of the respective home environment, each parent's ability to maintain stability for the child and each parent's ability to provide for the child's mental and physical well-being (see *Matter of Smith v Smith*, 61 AD3d 1275, 1276 [2009]; *Kaczor v Kaczor*, 12 AD3d 956, 958 [2004]). The record reveals that, although the mother understood that cigarette smoke was dangerous to the child's physical well-being, she smoked in the child's presence and stopped only when the court issued a temporary order prohibiting her from doing so. However, she continued to smoke cigarettes outside the child's presence, despite being pregnant with her second child. Notably, the uncontradicted testimony at trial established that the child at issue has an unspecified medical condition that requires the occasional use of a nebulizer. The mother testified that the trailer in which she and the child had lived with her boyfriend was deemed uninhabitable after a kerosene spill and she admitted that there had also been problems with the heat. In addition, there was a severe mold problem, which the mother did not consider detrimental to the child's well-being, as his bedroom was not adjacent to the mold-damaged room. The mother is unemployed and relies on her current boyfriend for support, although she admitted that they often argued and had broken up many times. The mother and the child also spend a considerable amount of time with the child's maternal grandmother and, when there, the child is exposed to the mother's former stepfather, who lives next door and often visits. The former stepfather has an extensive history of serious domestic violence toward the grandmother, the mother and the mother's brothers. Despite this history, the mother stated that she was not concerned about the child being around the stepfather provided that her mother was also there.

As for the father, he is employed and lives with his girlfriend of two years—who is also employed—and together they maintain a two-bedroom residence where they live with their own infant

child. While not singly a determinative factor, neither the father nor his girlfriend smokes cigarettes (*see Matter of Lizzio v Jackson*, 226 AD2d 760, 761 [1996]). Although the father admitted that he and his girlfriend once engaged in a verbal altercation in which he called the police to remove her from the home, this was an isolated incident and, overall, the father can provide the child with a more stable home environment. Finally, even though the father testified that the child would be cared for by the paternal grandmother or one of the paternal great-grandmothers while he was at work, whereas the mother has chosen not to work and to stay at home with the child, the amount of time the child will spend in day care is just one of many factors to consider (*see e.g. Matter of Reichenberger v Skalski*, 24 AD3d 1101, 1102-1103 [2005]).

Upon our review of the record and according deference to Family Court's factual findings given its unique ability to assess the parties' credibility, we cannot say that the court failed to properly weigh the relevant factors or that its determination lacks a sound and substantial basis in the record (*see Matter of Siler v Wright*, 64 AD3d 926, 928 [2009]; *Matter of Smith v Smith*, 61 AD3d at 1278). We are unpersuaded by the mother's claim that she should be appointed the caregiver for the child while the father is at work, an arrangement that was also requested at trial but rejected by Family Court.

Peters, J.P., Rose, Stein and McCarthy, JJ., concur. Ordered that the order is affirmed, without costs.