■ In the Matter of MARSHA D. LEWIS, Respondent, v JEFFREY J. TOMEO, Appellant. (And Another Related Proceeding.) [918 NYS2d 604]—

Egan Jr., J. Appeal from an order of the Family Court of Cortland County (Ames, J.), entered October 8, 2009, which granted petitioner's application, in two proceedings pursuant to Family Ct Act article 6, to modify prior orders of custody.

Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the unmarried parents of a daughter (born in 1997). In 2004, a Pennsylvania court ordered that the mother and father share legal custody of the child, with the father having primary physical custody and the mother having certain visitation. At some point in time, the father and the child relocated from Pennsylvania to the Town of Greene, Chenango County. Thereafter, in 2007, the father and the child relocated to the Town of Virgil, Cortland County, prompting the mother—who lived in Broome County—to initiate a proceeding in Broome County to modify the Pennsylvania court's 2004 order. This proceeding was ultimately dismissed in August 2007 based on the mother's failure to establish that a change in the child's primary residence was in her best interest. In 2008, the mother relocated from Broome County to North Carolina. In January 2009, the mother commenced the first of these proceedings in Cortland County seeking primary physical custody of the child. In July 2009, the mother filed an amended petition, after which the father left Cortland County with the child, returning to Pennsylvania, where he now resides with his current wife. The father then cross-petitioned seeking termination of all contact between the mother and child. Following fact-finding and *Lincoln* hearings, Family Court granted the mother's amended petition, dismissed the father's cross petition and ordered, among other things, that primary physical custody of the child be awarded to the mother. The father now appeals.

We first address the father's argument that Family Court's order is not supported by the record. To effectuate a modification of the existing custody order, the mother must establish "a change in circumstances reflecting a real need for change in order to insure the continued best interest of the child" (*Matter of Robert SS. v Ashley TT.*, 75 AD3d 780, 781 [2010] [internal quotation marks and citations omitted]; *see Matter of Paul T. v Ann-Marie T.*, 75 AD3d 788, 789 [2010], *lv denied* 15 NY3d 713 [2010]; *Matter of Henderson v MacCarrick*, 74 AD3d 1437, 1439 [2010]). The parties in this matter do not challenge Family Court's finding that there has been a change in circumstances since the issuance of the prior custody order, including that both the mother and father have since relocated to different states. Accordingly, the issue before this Court is whether, in seeking a modification of custody—the practical effect of which would be the relocation of the child to North Carolina—the mother has established by a preponderance of the evidence that the relocation is in the child's best interests (*see Matter of Sofranko v Stefan*, 80 AD3d 814, 815 [2011]; *Matter of Vargas v Dixon*, 78 AD3d 1431, 1432 [2010]; *Matter of Atkin v McDaniel*,

181 AD2d 188, 190 [1992]). Factors considered in making this determination include "each parent's reasons for seeking or opposing the move, the quality of the relationships between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent, the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements" (*Matter of Tropea v Tropea*, 87 NY2d 727, 740-741 [1996]; *see Matter of Vargas v Dixon*, 78 AD3d at 1432).

Here, based on the totality of the circumstances and according deference to Family Court's credibility determinations (*see Matter of Vargas v Dixon*, 78 AD3d at 1433; *Matter of Troy SS. v Judy UU.*, 69 AD3d 1128, 1131 [2010], *lv dismissed and denied* 14 NY3d 912 [2010]; *Matter of Richardson v Alling*, 69 AD3d 1062, 1064 [2010]), we find that a sound and substantial basis exists for Family Court's decision to award physical custody to the mother. Both parents have relocated. Thus, placement of the child with either parent will necessarily impact the child, who will be forced into a new school district. The record reflects that, during the time that the father has had primary physical custody of the child, she was left home alone in the evenings on a number of occasions while the father was out. Furthermore, the child was routinely dropped off after school at the ski lodge where her father was employed as a ski instructor, whereupon the child would go to the pro room to do homework. The pro room was described as noisy, with typically more than 20 people present at any given time during the week nights. After the father's shift ended at 9:00 P.M., he would usually take the child to a pub for a late dinner. There was also evidence that the child's school grades were suffering.

The father also conceded that he had used marihuana in the past. There was evidence elicited from the father's ex-wife that, during her relationship with the father, which ended in 2006, the father would occasionally smoke marihuana, and he would also routinely come home after midnight from his seasonal job as a ski instructor and, on many of those occasions, he had been drinking. The father testified that, because he and his current wife were unable to qualify for funding to purchase a home, they moved to Uniondale, Pennsylvania where they currently rent a three-bedroom home. However, there was no evidence elicited regarding the particulars of the father's work hours or income derived from his self-employed job as a contractor.

Finally, the father admitted to discouraging contact between his ex-wife and the child, even though there was evidence that they shared a close relationship, with the ex-wife having undertaken many of the parental duties during her marriage to the father. There was evidence that the father has also discouraged the mother's contact with the child in that, among other things, the father failed to permit the mother visitation on Mother's Day, failed to return the mother's telephone calls, and failed to advise the mother when he had relocated with the child.

In contrast, the mother moved to North Carolina to be with her fiancé and to pursue a position as a legal assistant with a law firm, where she currently earns approximately $35,000 per year. Based on her current work schedule, the mother would be available in the evenings to be with the child. While she and her fiancé no longer live together, the mother has obtained her own three-bedroom apartment, where she resides with the child's half sister and the child's half brother. The mother and the mother's sister both testified about the close relationship the child shares with her half sister. The mother also testified that, if awarded physical custody of the child, she would encourage the child's relationship with the father. Of note is that the mother regularly visits her sister who resides in Scranton, Pennsylvania, a fact which will aid in providing the father with suitable visitation arrangements.

While the father disputes that he has discouraged the mother's relationship with the child, we defer to Family Court's credibility determinations of the witnesses who testified at the hearing (*see Matter of Wentland v. Rousseau*, 59 AD3d 821, 823 [2009]). Likewise, while the father points to the 2007 Broome County order which states that the child maintains regular contact with the father's other child from a previous relationship, no evidence was elicited at the fact-finding hearing regarding the nature of that relationship or the frequency of the child's contact with that other child. Based on the totality of the circumstances, we find a sound and substantial basis for Family Court's determination. Finally, while not binding on this Court, we note that the attorney for the child fully supports Family Court's determination (*see Matter of Dickerson v Robenstein*, 68 AD3d 1179, 1181 [2009]).

Next, we are unpersuaded by the father's argument that he was denied the effective assistance of counsel. The transcript of the fact-finding hearing reveals that counsel actively cross-examined the mother's witnesses and offered appropriate objections, such that we cannot say that the father was "deprived of meaningful representation as a result of [the] lawyer's deficien-

cies" (*Matter of Arieda v Arieda-Walek*, 74 AD3d 1432, 1434 [2010] [internal quotation marks and citation omitted]; *see Matter of Thompson v Gibeault*, 305 AD2d 873, 875 [2003]). Contrary to the father's argument, counsel objected to the testimony of the ex-wife regarding events occurring prior to the custody order, which objection was sustained. In any event, Family Court is "vested with broad discretion in determining the parameters for proof to be accepted at the hearing" (*Matter of Cool v Malone*, 66 AD3d 1171, 1173 [2009] [internal quotation marks and citation omitted]), and the father's relationship with the ex-wife was fully explored on cross-examination such that the father was not deprived of meaningful representation in this regard. We likewise find that the father was not deprived of meaningful representation based on counsel's failure to present evidence that a finding of inadequate guardianship and lack of supervision by a local social services agency was under appeal, since the facts forming the basis of that finding were fully explored on cross-examination. Finally, we find that counsel's failure to qualify the child's school social worker as an expert witness to question her about the child's best interests does not amount to ineffective assistance of counsel (*see Matter of Barnhart v Coles*, 254 AD2d 645, 649 [1998]). While the social worker testified that the father provided the more stable home environment, the record reflects that the social worker's only contact with the mother was during one five minute telephone conversation. To the extent that the father claims other factors impaired counsel's performance, "we cannot conclude that these claimed deficiencies, even if established, resulted in actual prejudice to the [father]" (*Matter of Anson v Anson*, 20 AD3d 603, 605 [2005], *lv denied* 5 NY3d 711 [2005]).

Peters, J.P., Kavanagh, Stein and Garry, JJ., concur. Ordered that the order is affirmed, without costs.