Matter of Adam OO. v Jessica QQ. (2019 NY Slip Op 07656)





Matter of Adam OO. v Jessica QQ.


2019 NY Slip Op 07656


Decided on October 24, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 24, 2019

527069

[*1]In the Matter of Adam OO., Respondent,
v
Jessica QQ., Appellant.

Calendar Date: September 5, 2019

Before: Garry, P.J., Lynch, Mulvey and Devine, JJ.


Christopher Hammond, Cooperstown, for appellant.
Paul G.J. Madison, Stamford, for respondent.
Teresa C. Mulliken, Harpersfield, attorney for the child.
Tracy A. Donovan Laughlin, Cherry Valley, attorney for the child.



Devine, J.
Appeal from an order of the Family Court of Delaware County (Rosa, J.), entered June 12, 2018, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody and visitation.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the divorced parents of a son and a daughter (born in 2007 and 2010, respectively). An order was issued upon consent in August 2016 that awarded the parties joint legal custody of the children, with the mother having primary physical placement and the father enjoying set parenting time. The father relocated to South Dakota in January 2018 and filed, as is relevant here, an amended modification petition seeking physical custody of the children and permission to move them to South Dakota. Following a trial and a Lincoln hearing, Family Court granted the father's amended petition, but afforded the mother parenting time that included almost all of the children's summer vacation. The mother appeals.
We affirm. To begin, the father's amended petition was technically not a relocation application due to the fact that he was the noncustodial parent under the terms of the January 2016 order (see Matter of Crisell v Fletcher, 141 AD3d 879, 881 [2016]; Matter of Bodrato v Biggs, 274 AD2d 694, 695 [2000]). Instead, the question is whether modification of the custodial arrangement is warranted and, inasmuch as "the practical effect of granting [the father's] request for modification of custody would be relocation of the child[ren]," relocation must be considered within that framework (Matter of Messler v Messler, 218 AD2d 157, 158-159 [1996]; see Matter of Zwack v Kosier, 61 AD3d 1020, 1022 [2009], lv denied 13 NY3d 702 [2009]). The father was therefore obliged to demonstrate a change in circumstances that warranted an inquiry into whether modification of the existing custodial arrangement was needed to further the best interests of the children, with the proposed relocation factoring into the best interests analysis (see Matter of Zwack v Kosier, 61 AD3d at 1022-1023).
Addressing whether a change in circumstances occurred, the mother ceded her primary parenting responsibilities to the father after the January 2016 order was issued because of what the father claimed were concerns about her then-boyfriend and his drinking problem. The mother had minimal contact with the children for much of that period, and she admitted that the involvement of child protective officials resulted in the maternal grandparents caring for the children after the father left the area. Accordingly, although we do not agree with Family Court that the father's relocation constituted a change in circumstances by itself, our independent review of the record leaves us satisfied that one did occur and that Family Court properly considered what custodial arrangement was in the best interests of the children (see Matter of Charles AA. v Annie BB., 157 AD3d 1037, 1038-1039 [2018]; Matter of Richard Y. v Vanessa Z., 146 AD3d 1050, 1050-1051 [2017]; Matter of Bodrato v Biggs, 274 AD2d at 695).
As for the best interests of the children, the father is close to the children and has been their primary caregiver for long stretches of time. He moved to South Dakota to take a steady job after failing to find one in New York and, since doing so, has secured appropriate lodging for himself, his soon-to-be wife and their children. The father testified that the children's school in South Dakota had programs to address the son's special educational needs, and that he and his fiancÉe could provide the structured environment that the son needed and lacked in New York. Family Court appropriately considered the father's domestic violence history (see Matter of Aimee T. v Ryan U., 173 AD3d 1377, 1379 [2019]), finding that he was candid in discussing that history and crediting his claim that he had finally obtained an accurate mental health diagnosis and was in active treatment.[FN1] In contrast, although the children have other relatives in New York and have a good relationship with the mother, the record shows that the mother had a chaotic household, a succession of boyfriends with criminal backgrounds and/or substance abuse issues, a lack of steady employment and deficits of parental supervision and judgment. Family Court accordingly determined that an award of physical custody to the father in South Dakota would be in the best interests of the children and that it was possible to "preserv[e] the relationship between the noncustodial parent and child[ren]" by granting the mother generous parenting time, directing the father to provide transportation to and from that parenting time and ensuring daily communication between the mother and the children (Matter of Tropea v Tropea, 87 NY2d 727, 740-741 [1996]). In our view, after affording Family Court the deference on credibility issues to which it is entitled, a sound and substantial basis in the record supports that determination (see Matter of Lewis v Tomeo, 81 AD3d 1193, 1195-1196 [2011]; Matter of Zwack v Kosier, 61 AD3d at 1022-1023; Matter of Bodrato v Biggs, 274 AD2d at 696).
Garry, P.J., Lynch and Mulvey, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: The father and his fiancÉe are also in counseling to improve their relationship, and even the mother acknowledged that she did not believe that the father would intentionally harm the children.