Matter of Jelani PP. (Melissa QQ.) (2021 NY Slip Op 02577)





Matter of Jelani PP. (Melissa QQ.)


2021 NY Slip Op 02577


Decided on April 29, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:April 29, 2021

530686
[*1]In the Matter of Jelani PP., Appellant, Melissa QQ., Respondent.

Calendar Date:March 10, 2021

Before:Egan Jr., J.P., Aarons, Pritzker, Reynolds Fitzgerald and Colangelo, JJ.

Tracy Steeves, Kingston, for appellant.
Daniel Gartenstein, Kingston, attorney for the child.



Egan Jr., J.P.
Appeal from an order of the Family Court of Ulster County (McGinty, J.), entered October 16, 2019, which dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody and visitation.
Petitioner (hereinafter the father), who resides in Florida, and respondent (hereinafter the mother), who resides in New York, are the parents of a child (born in 2009). Pursuant to a July 2016 custody order, entered on consent, Family Court granted the parents joint legal custody of the child, the mother primary physical custody of the child and the father specified parenting time during holidays and the child's spring and summer school vacations. In July 2018, the father commenced this custody modification proceeding seeking primary physical custody of the child, alleging that the mother failed to, among other things, adequately provide for the child's educational well-being. Following a fact-finding hearing, Family Court continued the award of joint legal custody, with the mother maintaining primary physical placement of the child, but modified the order to provide for, among other things, expanded parenting time for the father during the child's summer vacation. Family Court also directed that there be weekly telephone communication between the father and the child, directed that the child may fly as an unaccompanied minor to the father's home in Florida and required the mother to notify the father of the child's medical appointments and to text him on a weekly basis in the event that the child is absent or tardy from school. The father appeals, contending that Family Court's order is not supported by a sound and substantial basis in the record.
Initially, we note that, despite being treated as such by Family Court, the father's modification petition is not technically a relocation application inasmuch as he was not the primary custodian of the child pursuant to the July 2016 custody order. However, inasmuch as "the practical effect of granting the father's request for modification of custody would be [the] relocation of the child[,] relocation must be considered within that framework" (Matter of Adam OO. v Jessica QQ., 176 AD3d 1418, 1419 [2019] [internal quotation marks, brackets and citation omitted]). The father, therefore, was required to demonstrate a change in circumstances, which would then warrant an inquiry into whether modification of the existing custody order was necessary to further the best interests of the child, with the proposed relocation being one of the factors for the court to consider in making its best interests determination (see id.; Matter of Zwack v Kosier, 61 AD3d 1020, 1022-1023 [2009], lv denied 13 NY3d 702 [2009]).
The record demonstrates that, since July 2016, the child has had a significant number of absences from school and regularly arrived late while in the mother's care, a fact that the mother blamed on not having a vehicle and the ensuing difficultly [*2]in balancing her work schedule with the child's school schedule. Following the 2015-2016 school year, the child had to repeat first grade and an individualized education program was implemented to address her special education needs. Notwithstanding this fact, during the 2016-2017 school year, the child tallied an additional 12 absences and 16 late arrivals and, during the 2017-2018 school year, she had 25 absences and 32 late arrivals. Accordingly, given our independent review of the record (see Matter of Matthew DD. v Amanda EE., 187 AD3d 1382, 1383 [2020]), we find that the child's attendance history and the potential negative impact on her educational well-being constituted a change in circumstances warranting an inquiry into the best interests of the child (see Matter of Audreanna VV. v Nancy WW., 158 AD3d 1007, 1009 [2018]; Matter of William EE. v Christy FF., 151 AD3d 1196, 1198 [2017]; Matter of Menhennett v Bixby, 132 AD3d 1177, 1179 [2015]).
Turning to the best interests analysis, the father's concerns regarding the mother's ability to provide for the child's educational needs are justified given the child's poor performance at school, her special education needs and her documented school attendance issues. Notwithstanding, upon consideration of all of the relevant factors, including "maintaining stability in the child[]'s li[fe], the quality of [the] respective home environments, the length of time the present custody arrangement has been in place, each parent's past performance, relative fitness and ability to provide for and guide the child[]'s intellectual and emotional development" (Matter of Kelly CC. v Zaron BB., 191 AD3d 1101, 1103 [2021] [internal quotation marks and citations omitted]), the degree to which the child's life may be enhanced emotionally and educationally if she were to move to Florida, as well as "the feasibility of preserving the relationship between the noncustodial parent and child through suitable [parenting time] arrangements" (Matter of Tropea v Tropea, 87 NY2d 727, 741 [1996]; see Matter of Latoya B. v Marvin D., 191 AD3d 1123, 1124 [2021]), we find that Family Court's decision is supported by a sound and substantial basis in the record.
The evidence at the fact-finding hearing established that both parents have a loving relationship with the child, provide safe and appropriate homes, are employed and financially capable of providing for the child's well-being and have taken an active role in her upbringing. The primary issue of concern is the mother's failure to adequately provide for the child's educational needs by ensuring that she regularly and consistently both attends school and arrives on time. The mother does not dispute that, since July 2016, she has not adequately addressed the child's needs in this regard. Although the mother has participated in the child's individualized education program meetings and attends the child's parent teacher conferences, she acknowledged that the instant litigation [*3]has been a "wake up call for her." To that end, she indicated that, as of February 2019, she procured a vehicle and, as of May 2019, she started a new job in a dental office that provides her with sufficient flexibility so that she can bring the child to school each day, thereby addressing the two main obstacles that she cited for her previous inability to ensure that the child consistently attended school. In addition, Family Court included a provision in its order requiring that the mother text the father each week if the child has had an unexcused absence or tardy at school and that, for any excused absences, she must provide the father a copy of the written excuse that she provided to the school by noon on the following Saturday.
Family Court's order also addressed the father's concerns regarding contact between the child and the maternal grandfather, a registered sex offender, by requiring the mother to abide by the order of protection that it previously issued, which prohibits contact between the child and the maternal grandfather until the child is 18 years of age. Moreover, Family Court scheduled regular weekly telephone contact between the father and the child on Sunday and Thursday evenings at 7:00 p.m., addressing the father's concerns regarding his ability to communicate with the child on a regular basis, and also required the mother to provide him notice of all of the child's medical appointments within 24 hours of when they are made so that he may attend same, either in person or telephonically, and take a more active role in maintaining the child's physical and mental health, if he so chooses (see Matter of Antonio MM. v Tara NN., 191 AD3d 1196, 1198 [2021]).
There is no question that having the child relocate to Florida to live with the father would have a detrimental impact on the mother's relationship with the child and disrupt the stability that the child presently has in New York. Although the father outlined the many activities that the child engages in with him and the child's extended family in Florida, he failed to demonstrate how the child's life would otherwise be enhanced emotionally or educationally by relocating (see generally Ostrander v McCain, 68 AD3d 1480, 1482-1483 [2009]). With respect to the child's education, other than identifying the school that the child would attend, the father provided no evidence that it provided a better educational opportunity compared to the child's present school, where an individualized educational program has been implemented to address her special education needs (see Matter of Cowper v Vasquez, 121 AD3d 1341, 1343 [2014], lv denied 24 NY3d 913 [2015]; Matter of Dickerson v Robenstein, 68 AD3d 1179, 1180-1181 [2009]). Moreover, Family Court attempted to maximize the father's opportunities to exercise regular and meaningful parenting time by extending the time that the child would spend in Florida during her summer vacation, as well as providing that the child may fly to Florida [*4]as an unaccompanied minor thereby making it more affordable for him to exercise his scheduled parenting time either in New York or Florida during other holidays and school breaks (see Matter of Dockery v Reid-O'Garro, 161 AD3d 1147, 1148-1149 [2018]; Matter of Schneider v Lascher, 72 AD3d 1417, 1417-1418 [2010], lv denied 15 NY3d 708 [2010]). Accordingly, giving deference to Family Court's fact-finding and credibility determinations, we find that there is a sound and substantial basis in the record supporting Family Court's order (see Matter of Adam OO. v Jessica QQ., 176 AD3d at 1420; Matter of Lewis v Tomeo, 81 AD3d 1193, 1195-1196 [2011]; Matter of Zwack v Kosier, 61 AD3d at 1022-1023).
Aarons, Pritzker, Reynolds Fitzgerald and Colangelo, JJ., concur.
ORDERED that the order is affirmed, without costs.